## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| TONYA LUKIC, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | )   No. 2:11-cv-02706-JPM-dkv |
| EISAI CORPORATION OF NORTH | ) |
| AMERICA, INC., d/b/a EISAI, | ) |
| INC., | ) |
| | ) |
|     Defendant. | ) |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant's Motion for Summary Judgment, which was filed on September 14, 2012. (ECF No. 49.) Plaintiff responded in opposition on October 19, 2012. (ECF No. 53.) Defendant replied in support on November 2, 2012. (ECF No. 57.)

For the reasons stated below, Defendant's Motion for Summary Judgment (ECF No. 49) is GRANTED.

## I. BACKGROUND

This case concerns claims of discrimination and retaliation in the employment context pursuant to the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12101-12213 (2006), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17 (2006), and the Family Medical Leave Act (the "FMLA"), 29 U.S.C. §§ 2601-2654 (2006). The following facts are undisputed unless otherwise indicated.

On November 14, 2005, Plaintiff Tonya Lukic ("Plaintiff" or "Lukic") began working for Defendant Eisai Corporation of North America, Inc. ("Defendant" or "Eisai"). (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ("Pl.'s Undisputed Facts"), ECF No. 53-3, ¶ 3.) Eisai manufactures and sells prescription drugs,[1] and it hired Lukic as a Medical Sales Specialist to make sales calls in an assigned geographic territory. (Id. ¶¶ 1-3.)

"[A Medical Sales Specialist] is required to record sales call activity, honestly, through Eisai's FOCUS system." (Id. ¶ 5.) "Eisai's core values require employees to act with integrity, including being honest. Eisai identifies the following as 'Misconduct' which may lead to termination: failure to comply with Eisai's values; dishonesty; falsifying information on any company document or record." (Id. ¶ 48.)

From November 16, 2009, to February 21, 2010, Lukic took leave pursuant to the FMLA in connection with her pregnancy and the birth of her daughter. (See id. ¶ 55.) Lukic's daughter has Mosaic Down Syndrome. (Id. ¶ 57.)

On April 1, 2010, Lukic was reassigned to Eisai's newly drawn Jackson territory (the "Jackson Territory"). (Id. ¶ 22.) That reassignment was made when "Eisai restructured its sales

---

[1] Plaintiff's response to Defendant's assertion that it manufactures and sells prescription drugs is that the fact is "[i]mmaterial." (Pl.'s Undisputed Facts, ECF No. 53-3, ¶ 1.) The Court includes this fact for purposes of context only.

force . . . through which sales territories were redrawn and realigned and [Medical Sales Specialists] were assigned to the newly defined territories [(the "2010 Restructure")]." (Id. ¶ 13.)

"Eisai utilized a third-party vendor ("Vendor") to, inter alia, analyze data and determine: (a) the geographic lines of the newly drawn territories; (b) the 'business centers' of the new territories; and (c) placement of individuals into the new territories." (Id. ¶ 14.) Lukic "was considered for the newly drawn [Jackson Territory] because she lived in that territory." (Id. ¶ 21.) "No [Regional Sales Directors] or [District Managers] made any decisions concerning the placement of [Medical Sales Specialists] into sales territories." (Id. ¶ 16.)

During the time that Eisai restructured its sales force, "Eisai laid-off approximately 20% of its sales force." (Id. ¶ 13.) Lukic's "placement in the Jackson Territory did not involve a change in salary or benefits." (Id. ¶ 22.)

On April 26, 2010, a former Medical Sales Specialist, Ellen Gaw ("Gaw"), "reported to EthicsPoint that [Lukic] had falsified call activity records, including by lying about calls on doctors who were on vacation." (Id. ¶ 34.) "EthicsPoint is a toll-free number for individuals to use for purposes of reporting

potential ethical and compliance issues at Eisai."[2]  (Id. ¶ 33.)

"Gaw submitted documentation from Eisai's FOCUS system

reflecting the dates [Lukic] reported making Detail Calls on

certain doctors along with Gaw's handwritten notes concerning

allegations that the doctors were unavailable on those dates for

various reasons."  (Id. ¶ 35.)  Lukic "does not dispute that

Gaw's complaint should have led to an investigation of [Lukic's]

call activity."  (Id. ¶ 36.)

On or about April 27, 2010, or April 28, 2010, Eisai's

Compliance Department forwarded the allegations that Gaw made on

EthicsPoint to Christa Murphy ("Murphy"), Eisai's Associate

Director of Human Resources.  (Id. ¶ 37; see also id. ¶ 29.)

> During the period [April 23, 2010], to [June 14,
> 2010], Murphy was completing her substantial
> responsibilities in connection with the 2010
> Restructure (including handling and processing a large
> number of severance agreements, among other
> responsibilities), participated in the extensive
> annual performance review process for Eisai employees
> (including travel), and was out for personal time off.

(Id. ¶ 38.)

Before Murphy investigated Gaw's allegations, the following

three events occurred.  First, "[i]n early May 2010, [Lukic]

learned that [an employee in the Memphis Territory] had resigned

and she verbally asked [District Manager Nixon ("Nixon")] for a

---

[2] Plaintiff disputes that EthicsPoint was for the use of individuals and
asserts that it is for the use of Eisai Employees only.  (Pl.'s Undisputed
Facts, ECF No. 53-3, ¶ 33.)  Plaintiff's distinction is not relevant given
that it is undisputed that she "does not dispute that Gaw's complaint should
have led to an investigation of [Lukic's] call activity."  (Id. ¶ 36.)

transfer to the Memphis Territory." (Id. ¶ 24.) "Nixon discussed [Lukic's] request with [Regional Sales Director] Michelle Radney [("Radney")], who denied the request based on her understanding that the criteria applied to the 2010 Restructure made [Lukic] ineligible for placement in the Memphis Territory." (Id. ¶ 25.) "Nixon advised [Lukic] that her transfer request had been denied because she did not live close enough to the Memphis Territory." (Id. ¶ 27.)

Second, on May 26, 2010, Lukic emailed Nixon, renewing her request to be transferred. (Id. ¶ 28.) "As of [June 8, 2010], no one else had posted for the position and Radney recommended approving [Lukic's] request." (Id. ¶ 31.) Lukic's "transfer to the Memphis Territory was effective [sic] [June 21, 2010]." (Id. ¶ 32.)

Third, on June 14, 2010, Lukic received a Performance Review with a "Manager's Overall Rating" of "Exceeds Expectations." (ECF No. 53-1 at 8.)[3]

On or about June 15, 2010, Murphy began investigating Gaw's allegations by "conduct[ing] a telephone interview with Gaw in which Gaw provided some additional information regarding her allegations." (Pl.'s Undisputed Facts, ECF No. 53-3, ¶ 39.) On or about June 21, 2010, "Murphy provided Radney with information regarding Gaw's allegations for investigation." (Id. ¶ 40.)

---

[3] While not in the Plaintiff's Undisputed Facts, there is no indication that the parties dispute the authenticity of the document.

Radney, _inter alia_, pulled information concerning [Lukic's] FOCUS records and conducted interviews with individuals who worked in the offices of doctors who allegedly were not available on dates [Lukic] had recorded calls with them. Radney obtained information that certain doctors were not available to see [Medical Sales Specialists] in their offices on dates on which [Lukic] had recorded seeing them.[4]

(_Id._ ¶ 41.)

On July 1, 2010, "Radney . . . met with [Lukic] to discuss her call activity and the information revealed in the investigation so far." (_Id._ ¶ 42.) At that meeting,

Radney advised [Lukic] of information concerning discrepancies between [Lukic's] call records and information from physicians' offices indicating they had been out of the office. [Lukic] told Radney that she saw doctors in their clinics or surgery centers, and she would also detail doctors if she encountered them in parking lots, hospitals, and coffee shops (including specific examples).

(_Id._ ¶ 44.)

After the meeting on July 1, 2010,

Radney conducted a second round of interviews with the doctors' offices to determine whether there was any way [a Medical Sales Specialist] might have had access to the doctor in another location. Radney obtained additional information that doctors were not available to see [Medical Sales Specialists] at all on dates on which [Lukic] had entered Detail Calls for these doctors, including:

---

[4] Plaintiff disputes this fact because Defendant did not speak with the doctors Plaintiff claims to have met. (Pl.'s Undisputed Facts, ECF No. 53-3, ¶ 41.) Plaintiff also disputes this fact because she claims that the statements of those interviewed are hearsay. (_Id._ ¶ 41.) Defendant does not refer to the statements to prove the truth of the matter asserted in the statement; rather, the statements are used only to show what Defendant believed when it terminated Plaintiff's employment. As a result, the statements of those interviewed are not hearsay. _See_ Fed. R. Evid. 801.

> a. Dr. Souder was in Cabo San Lucas the week of [March 8, 2010]; [Lukic] reported a Detail Call with him on [March 9, 2010].
>
> b. Dr. Appleton was in Boston, MA [sic] on [June 8] and [June 9, 2010]; [Lukic] reported a Detail Call with him on [June 9, 2010].
>
> c. Dr. Patel was out [from March 8, 2010, to December of 2010]; [Lukic] recorded a Detail Call with him on [March 9, 2010].
>
> d. Dr. Fields was out [from March 8, 2010, to December of 2010]; [Lukic] recorded a Detail Call with him on [March 10, 2010].[5]

(Id. ¶ 45.)

On July 8, 2010, "Radney had a follow-up discussion with [Lukic], who maintained her call records were accurate and reiterated that she would detail doctors away from their offices." (Id. ¶ 46.)

"Based on the investigation, Radney concluded that [Lukic] violated Eisai's core value of integrity by falsifying her call activity records, and recommended that [Lukic] be terminated." (Id. ¶ 49; see also Mem. Regarding Termination of Tonya Lukic, ECF No. 49-6 at 50-51.) On July 16, 2010, Radney informed Lukic that Lukic's employment with Eisai had been terminated. (Pl.'s Undisputed Facts, ECF No. 53-3, ¶ 51.)

---

[5] Plaintiff disputes this fact because Defendant did not speak with the doctors Plaintiff claims to have met. (Pl.'s Undisputed Facts, ECF No. 53-3, ¶ 45.) Plaintiff also disputes this fact because she claims that the statements of those interviewed are hearsay. (Id.) The statements of those interviewed are not hearsay. See discussion supra note 4.

On October 26, 2010, Lukic filled out a U.S. Equal Employment Opportunity Commission Intake Questionnaire ("EEOC Intake Questionnaire"). (ECF No. 53-5 at 7-12.) In the EEOC Intake Questionnaire, Lukic checked the boxes for sex discrimination and disability discrimination. (Id. at 8.) Where asked if she sought help from an attorney, Lukic indicated that she spoke to an attorney that "suggested filing a claim [sic] July 2010." (Id. at 10.)

Immediately below Lukic's statement, the EEOC Intake Questionnaire asks the person filling it out to "[p]lease check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. . . . If you want to file a charge, you should check Box 2." (Id.) Two boxes are provided. Box 1 indicates the following intention: "I want to talk to an EEOC employee before deciding whether to file a charge." (Id.) Box 2 indicates the following intent: "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above." (Id.) Lukic did not check either of the boxes provided. (Id.)

On October 26, 2010, Lukic also signed a Charge of Discrimination against Eisai that was presented to the Equal Employment Opportunity Commission (the "EEOC"). (ECF No. 53-5 at 14.) In the Charge of Discrimination, Lukic checked the

8

boxes indicating retaliation and disability discrimination, but not sex discrimination. (Id.) Where asked to indicate the "Particulars" of the charge, Lukic referred to "my daughter's disability" and stated the following: "I believe I have been discriminated against in retaliation for opposing unlawful discrimination and disability association in violation of the [ADA]." (Id.)

On August 17, 2011, Lukic filed a Complaint with this Court. (ECF No. 1.) In her Complaint, Lukic claims that she had been discriminated and retaliated against in violation of the ADA, Title VII, and the FMLA. (See id. ¶¶ 57-96.)

## II. STANDARD OF REVIEW

The Court first discusses the summary-judgment standard, then the McDonnell Douglas burden-shifting framework. The Court then addresses whether the McDonnell Douglas burden-shifting framework has any effect on the burdens under summary judgment.

### A. The Summary-Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense."

Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012). "A dispute over material facts is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Chapman, 670 F.3d at 680 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp., 477 U.S. at 323). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Id. at 448-49 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"To show that a fact is, or is not, genuinely disputed, both parties are required to either 'cite[] to particular parts of materials in the record' or 'show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" Bruederle, 687 F.3d at 776 (alterations in

original) (quoting Fed. R. Civ. P. 56(c)(1)); see also
Mosholder, 679 F.3d at 448 ("To support its motion, the moving
party may show 'that there is an absence of evidence to support
the nonmoving party's case.'").

"The court need consider only the cited materials, but it
may consider other materials in the record." Fed. R. Civ. P.
56(c)(3); see also Emerson v. Novartis Pharm. Corp., 446 F.
App'x 733, 736 (6th Cir. 2011) ("'[J]udges are not like pigs,
hunting for truffles' that might be buried in the record.");
Chi. Title Ins. Corp. v. Magnuson, 487 F.3d 985, 995 (6th Cir.
2007) ("A district court is not required to 'search the entire
record to establish that it is bereft of a genuine issue of
material fact.'").

"In considering a motion for summary judgment, [a court]
must draw all reasonable inferences in favor of the nonmoving
party." Phelps v. State Farm Mut. Auto. Ins. Co., 680 F.3d 725,
730 (6th Cir. 2012) (citing Matsushita Elec. Indus. Co., 475
U.S. at 587). "The central issue is 'whether the evidence
presents a sufficient disagreement to require submission to a
jury or whether it is so one-sided that one party must prevail
as a matter of law.'" Id. (quoting Anderson, 477 U.S. at 251-
52). "[A] mere 'scintilla' of evidence in support of the non-
moving party's position is insufficient to defeat summary
judgment; rather, the non-moving party must present evidence

11

upon which a reasonable jury could find in her favor." <u>Tingle</u>
<u>v. Arbors at Hilliard</u>, 692 F.3d 523, 529 (6th Cir. 2012)
(quoting <u>Anderson</u>, 477 U.S. at 252).

**B.    The <u>McDonnell Douglas</u> Burden-Shifting Framework**

If a plaintiff uses circumstantial evidence to prove a
claim under Title VII, the ADA, or the FMLA, the court applies
the <u>McDonnell Douglas</u> burden-shifting framework.  <u>See, e.g.</u>,
<u>Chattman v. Toho Tenax Am., Inc.</u>, 686 F.3d 339, 347 (6th Cir.
2012) (Title VII context); <u>Stansberry v. Air Wis. Airlines</u>
<u>Corp.</u>, 651 F.3d 482, 487 (6th Cir. 2011) (ADA context); <u>Donald</u>
<u>v. Sybra, Inc.</u>, 667 F.3d 757, 762 (6th Cir. 2012) (FMLA
context).  "Circumstantial evidence . . . is proof that does not
on its face establish discriminatory animus, but does allow a
factfinder to draw a reasonable inference that discrimination
occurred."  <u>Provenzano v. LCI Holdings, Inc.</u>, 663 F.3d 806, 811
(6th Cir. 2011) (citation omitted) (internal quotation marks
omitted).

"Under the <u>McDonnell Douglas</u> burden-shifting framework,
once a plaintiff makes out a <u>prima facie</u> case, the burden shifts
to the defendant to articulate a non-discriminatory explanation
for the employment action, and if the defendant does so, the
burden shifts back to the plaintiff to prove that the
defendant's explanation is pretextual."  <u>Whitfield v. Tennessee</u>,
639 F.3d 253, 259 (6th Cir. 2011) (citing <u>McDonnell Douglas</u>

<u>Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973)) (ADA context); <u>see</u> <u>also</u> <u>Donald</u>, 667 F.3d at 762-63 (FMLA context).

**C.   Summary-Judgment Burdens in the Context of the <u>McDonnell</u> <u>Douglas</u> Burden-Shifting Framework**

Regarding a motion for summary judgment, the moving party has a burden of production:  "using evidence in the record, [the movant must show] 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  <u>Blizzard v. Marion Technical Coll.</u>, 698 F.3d 275, 282 (6th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).  Where, however, the moving party also has the burden of persuasion at trial, the moving party has a higher burden:

> In cases where the party moving for summary judgment also bears the burden of persuasion at trial, the party's initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.

<u>Surles v. Andison</u>, 678 F.3d 452, 455-56 (6th Cir. 2012) (internal quotation marks omitted).

Under the <u>McDonnell Douglas</u> burden-shifting framework, however, "[a]lthough the burdens of production shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  <u>White v. Baxter</u> <u>Healthcare Corp.</u>, 533 F.3d 381, 392 (6th Cir. 2008) (citing <u>Tex.</u>

Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981));
see also Whitfield, 639 F.3d at 260 (6th Cir. 2011) (holding
that plaintiff must be able to show a genuine issue of material
fact as to pretext because plaintiff bears the burden of proof
on that issue at trial).

In a case where the McDonnell Douglas burden-shifting
framework applies, therefore, a defendant moving for summary
judgment does not have a higher burden because the defendant
does not have a burden of persuasion.  See White, 533 F.3d at
392.

**III. ANALYSIS**

The Court considers, in turn, Plaintiff's Title VII claims,
her ADA claims, and her FMLA claim.

**A.    Defendant Is Entitled to Summary Judgment Regarding
Plaintiff's Title VII Claims for Sex Discrimination Because
Plaintiff Failed To Exhaust Her Administrative Remedies.**

The Court will consider whether Plaintiff's Title VII
claims can be reasonably expected to grow out of her Charge of
Discrimination, before considering whether Plaintiff's EEOC
Intake Questionnaire should be considered as a proxy for her
Charge of Discrimination.

**1.    Plaintiff's Title VII Claims Cannot Reasonably Be
Expected To Grow Out of Her Charge of Discrimination.**

"A person seeking to bring a discrimination claim under
Title VII in federal court must first exhaust her administrative

remedies [with the EEOC]." Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 731 (6th Cir. 2006). The "judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." Weigel v. Baptist Hosp. of E. Tenn., 302 F.3d 367, 380 (6th Cir. 2002) (internal quotation marks omitted). The charge of discrimination, however, "should be liberally construed." Randolph, 453 F.3d at 732.

In the case presently before the Court, Plaintiff made no reference to sex discrimination in the Charge of Discrimination she filed with the EEOC. She neither checked the box for sex discrimination nor alleged any facts related to sex discrimination. (See ECF No. 53-5 at 14.) The facts that she alleged in the Charge of Discrimination were related only to her "daughter's disability" and "retaliation for opposing unlawful discrimination and disability association in violation of the [ADA]." (See id.) Plaintiff's claims under Title VII for sex discrimination, therefore, cannot be "'reasonably expected to grow out of the charge of discrimination.'" See Randolph, 453 F.3d at 732-33.

2. **Plaintiff's EEOC Intake Questionnaire Should Not Be Considered As a Proxy for her Charge of Discrimination.**

Plaintiff argues that she exhausted her administrative remedies by checking the box for sex discrimination on her EEOC

Intake Questionnaire. (Pl.'s Resp. in Opp'n, ECF No. 53, at 15-16; see also ECF No. 53-5 at 7-12.) Plaintiff further argues that she stated in the EEOC Intake Questionnaire that: "I applied for the Memphis territory and was denied . . . The man who worked the territory before her lived 2 miles farther from the business center than her."[6] (Pl.'s Resp. in Opp'n, ECF No. 53, at 16 (alteration in original).)

Plaintiff, however, fails to argue that her EEOC Intake Questionnaire should be considered as a Charge of Discrimination, so she fails to "set forth specific facts showing a triable issue of material fact." See Mosholder, 679 F.3d at 448-49.

Furthermore, even if the Court were to consider this possibility, it would fail under current precedent. The Supreme Court has held that an EEOC Intake Questionnaire can be considered a Charge of Discrimination if the EEOC Intake Questionnaire contains a request for the agency to act: "if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Fed. Express Corp. v. Holowecki, 552 U.S. 389, 402, 405 (2008).

---

[6] The first half of this quote appears to be taken from the second page of the EEOC Intake Questionnaire (see ECF No. 53-5 at 8), and the second half of this quote appears to be a misquote taken from the first and second pages attached to the EEOC Intake Questionnaire (see id. at 11-12).

While the Supreme Court ruled in the context of the ADEA, the Sixth Circuit has applied the Supreme Court's holding in Holowecki to Title VII claims. See Williams v. CSX Transp. Co., 643 F.3d 502, 508-09 (6th Cir. 2011). In Williams, the Sixth Circuit found that a "Charge Information Form" was not a mere request for information because the plaintiff said that the employer owed her money damages and the "request for money damages was a request for the EEOC to act." Williams, 643 F.3d at 510.

In the case presently before this Court, however, Plaintiff's EEOC Intake Questionnaire contains no request for the EEOC to act. (See ECF No. 53-5 at 7-12.) Plaintiff merely stated that an attorney "suggested filing a claim." (Id. at 10.) The statement itself is ambiguous as to whether Plaintiff wants to file a charge or is merely seeking more information. Furthermore, immediately below that statement, and despite an explicit instruction to make her intent clear, Plaintiff failed to check one of two boxes that would indicate whether she wanted to file a claim or merely wanted more information. (See id.) The EEOC Intake Questionnaire, therefore, cannot reasonably be interpreted as "a request for the EEOC to act." See Williams, 643 F.3d at 510.

In summary, Defendant is entitled to summary judgment regarding Plaintiff's Title VII claims because Plaintiff failed

to exhaust her administrative remedies.  See <u>Randolph</u>, 453 F.3d
at 732-33.

**B.  Defendant Is Entitled to Summary Judgment Regarding Plaintiff's ADA Claims.**

The Court first considers Plaintiff's claims of retaliation
under the ADA.  The Court then considers Plaintiff's claims of
associational discrimination under the ADA based on Defendant's
initial denial of Plaintiff's transfer request, Defendant's
investigation of Plaintiff's sales-call activity, and
Defendant's termination of Plaintiff's employment.

**1.  Regarding Plaintiff's Claims for Retaliation Under the ADA, Plaintiff Does Not Cite to Evidence Sufficient To Show a Triable Issue of Material Fact as to Whether She Engaged In Protected Conduct.**

The ADA prohibits retaliation "against any individual
because such individual has opposed any act or practice made
unlawful by this chapter."  42 U.S.C. § 12203(a) (2006).  In
order to establish a prima facie claim of retaliation, the
plaintiff must show the following:  "(1) she engaged in a
protected activity; (2) she suffered an adverse employment
action; and (3) there is a causal link between the protected
activity and the adverse employment action."  <u>Bryson v. Regis</u>
<u>Corp.</u>, 498 F.3d 561, 577 (6th Cir. 2007).

Plaintiff claims that Defendant retaliated against her
because she was associated with a disabled person and advocated
for the rights of a disabled person.  (Compl., ECF No. 1, ¶¶ 63-

65, 67.)  As a result of her association and advocacy, Plaintiff claims that Defendant retaliated against her by denying her initial request for a transfer, investigating her sales-call activity, and terminating her employment.  (Id.)

In its Memorandum in Support of Motion for Summary Judgment, Defendant has shown that the "adverse party cannot produce admissible evidence to support the fact" that she engaged in protected activity.  See Fed. R. Civ. P. 56(c)(1)(B). Defendant argues that Plaintiff did not engage in any protected activity that would make her the subject of retaliation.  (ECF No. 49-1 at 6 n.8.)  Specifically, "Plaintiff did not allege the [sic] she complained about disability discrimination and was retaliated against for doing so; nor is there any evidence that she made such a complaint."  (Id.)

Plaintiff has not "set forth specific facts showing a triable issue of material fact."  Mosholder, 679 F.3d at 488-89. Plaintiff neither points to particular materials in the record indicating that she engaged in protected activity nor makes any reference to her retaliation claims under the ADA.  (See Pl.'s Resp. in Opp'n, ECF No. 53.)  Furthermore, while Plaintiff did request a transfer to accommodate her need to care for her disabled daughter, this is not protected activity:  "employers are not required to provide reasonable accommodations to non-

disabled workers" due to their association with a disabled person.  Stansberry, 651 F.3d at 486.

The Court, therefore, finds that it is undisputed that Plaintiff did not engage in protected activity.  See Fed. R. Civ. P. 56(e)(2); see also Chi. Title Ins. Corp., 487 F.3d at 995 ("A district court is not required to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'").  Since Plaintiff did not engage in protected activity, Plaintiff cannot establish the first element of her retaliation claims under the ADA.  See Bryson, 498 F.3d at 577. As a result, Plaintiff "fails to make a sufficient showing of an essential element of [her] case on which [she] bears the burden of proof . . . [so] summary judgment is proper."  Chapman, 670 F.3d at 680; see also Fed. R. Civ. P. 56(e)(3).

> **2.    Regarding Discrimination for Associating with a Disabled Person Under the ADA, Plaintiff Does Not Cite to Evidence Sufficient To Survive Summary Judgment.**

The ADA forbids "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."  42 U.S.C. § 12112(b)(4) (2006).

In the case presently before this Court, Plaintiff does not offer any direct evidence of discrimination (see Pl.'s Resp. to Def.'s Statement of Undisputed Facts, ECF No. 53-3, ¶¶ 62-63),

so the McDonnell Douglas burden-shifting framework is used to evaluate her claim. See discussion supra II.B.

As applied to the ADA, the McDonnell Douglas burden-shifting framework requires a plaintiff to first establish a prima facie claim by demonstrating that:

> (1) the employee was qualified for the position; (2) the employee was subject to an adverse employment action; (3) the employee was known to be associated with a disabled individual; and (4) the adverse employment action occurred under circumstances that raise a reasonable inference that the disability of the relative was a determining factor in the decision.

Stansberry, 651 F.3d at 487.

Plaintiff "maintains that Eisai terminated her because of her association with her daughter, Mia, who was diagnosed with the disabling condition of Mosaic Down Syndrome." (Pl.'s Resp. in Opp'n, ECF No. 53, at 2-3.) Plaintiff argues that Defendant believed that her association with her disabled daughter would distract her and make her inattentive at work: "The 'distraction' theory is based on the employer's fear that the employee will be somewhat inattentive at work because of the disability of someone with whom he or she is associated. . . . [T]his case appropriately can be placed under the 'distraction' theory." (Id. at 3 (citation omitted).) As a result of discrimination based on her association with her disabled daughter, Plaintiff argues, Defendant took the following three discriminatory actions:  denying her initial transfer request;

investigating her sales-call activity; and terminating her

employment. (Compl., ECF No. 1, ¶¶ 62-67.) The alleged

discriminatory actions are considered in turn.

> **a. Regarding Defendant's Initial Refusal To Transfer Plaintiff to a Different Territory, Plaintiff Does Not Cite to Evidence Sufficient To Show a Triable Issue of Material Fact as to Whether Plaintiff Suffered an Adverse Employment Action.**

In her Complaint, Plaintiff claims that Defendant

discriminated against her "in violation of the ADA when it

initially refused to approve her verbal request for a transfer

from the Jackson Territory to the re-aligned Memphis Territory

after her territory was expanded to require her to travel three

(3) to four (4) days per week." (ECF No. 1 ¶ 62.)

In its Memorandum in Support of Motion for Summary

Judgment, Defendant has shown that the "adverse party cannot

produce admissible evidence to support the fact" that she was

subject to an adverse employment action. See Fed. R. Civ. P.

56(c)(1)(B). Defendant argues that "denial of a lateral

transfer request does not constitute an adverse employment

action." (ECF No. 49-1 at 7.) Drawing an analogy to

discrimination in the context of Title VII, Defendant argues

that denial of a lateral-transfer request is not an adverse

employment action unless there is an additional showing of some

unfavorable change in working conditions or job status. (Id. at

7 (citing <u>Blackburn v. Shelby Cnty.</u>, 770 F. Supp. 2d 896, 921 (W.D. Tenn. 2011)).)

Plaintiff does not "set forth specific facts showing a triable issue of material fact." <u>Mosholder</u>, 679 F.3d at 448-49. Specifically, Plaintiff does not point to evidence showing that the initial denial of her transfer resulted in a "significant change in employment status, including hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." <u>See</u> <u>Spees v. James Marine, Inc.</u>, 617 F.3d 380, 391 (6th Cir. 2010) (internal quotation marks omitted).

In her Response in Opposition, Plaintiff neither points to particular materials in the record indicating that the denial was adverse nor makes any reference to her claim of discrimination regarding her initial denial of the transfer. (<u>See</u> ECF No. 53.) In her Complaint, Plaintiff does state that the transfer was refused "<u>after</u> her territory was expanded to require her to travel three (3) to four (4) days per week." (ECF No. 1, ¶ 62 (emphasis added).) In addition, Plaintiff's Statement of Additional Undisputed Material Facts contains the following statement regarding Plaintiff:

> After the transfer [to the Jackson Territory], her work hours changed as she was required to travel longer distances and work longer hours in order to call on all her targeted health care providers. When Lukic worked in the Memphis Territory, she typically

> left home around 8:00 a.m. and returned around 4:00
> p.m. After the transfer, she had to leave home by
> 7:00 a.m. and often did not return home until after
> 6:00 p.m.

(ECF No. 53-10 ¶ 11 (citations omitted).) Those facts, however, are irrelevant: the conditions cited by Plaintiff were the result of her transfer to the Jackson Territory, not the initial refusal to transfer her out of the Jackson Territory.

The Court, therefore, finds that it is undisputed that Plaintiff did not suffer an adverse employment action when Defendant initially denied her request for a transfer out of the Jackson Territory. See Fed. R. Civ. P. 56(e)(2); see also Chi. Title Ins. Corp., 487 F.3d at 995 ("A district court is not required to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'"). Since Plaintiff did not suffer an adverse employment action, Plaintiff cannot establish the second element of her discrimination claim under the ADA regarding the initial refusal to transfer her out of the Jackson Territory. See Bryson, 498 F.3d at 577. As a result, Plaintiff "fails to make a sufficient showing of an essential element of [her] case on which [she] bears the burden of proof . . . [so] summary judgment is proper." Chapman, 670 F.3d at 680; see also Fed. R. Civ. P. 56(e)(3).

**b. Regarding Defendant's Investigation of Plaintiff's Sales-Call Activity, Plaintiff Does Not Cite to Evidence That Is Sufficient To Survive Summary Judgment.**

In her Complaint, Plaintiff claims that "Eisai had no reason to audit" her, and that she was "arbitrarily audited" because of her association with her disabled daughter. (Compl., ECF No. 1, ¶¶ 64-65.) The Court, however, finds that Defendant is entitled to summary judgment because Plaintiff does not cite to evidence sufficient to show a triable issue of material fact (i) as to whether she suffered an adverse employment action or (ii) as to whether Defendant's reason for starting the investigation was a pretext.

**i. Plaintiff Does Not Cite to Evidence That Is Sufficient To Show a Triable Issue of Material Fact as to Whether the Internal Investigation Was an Adverse Employment Action.**

In its Memorandum in Support of Motion for Summary Judgment, Defendant asserts that Plaintiff "cannot produce admissible evidence to support the fact" that she was subject to an adverse employment action. See Fed. R. Civ. P. 56(c)(1)(B). Defendant makes several arguments, including, by analogy to Title VII, that an internal investigation into an employee's suspected wrongdoing is not an adverse employment action. (ECF No. 49-1 at 9 (citing Dendinger v. Ohio, 207 F. App'x 521, 527 (6th Cir. 2006)).) Furthermore, Defendant describes the investigation as consisting of receiving a complaint from Gaw,

gathering Plaintiff's records, interviewing people that work in physicians' offices, and meetings with Plaintiff. (Id. at 4-5.)

Plaintiff does not "set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448-49. In her Response in Opposition, Plaintiff refers to only the adverse action of Defendant terminating her employment. (See ECF No. 53 at 4-5.) Plaintiff refers to the investigation only to suggest that Defendant's reason for terminating her was a pretext. (Id. at 8-12.) As a result, Plaintiff produces no evidence suggesting that the Court should consider the investigation itself an adverse employment action.

The Court, therefore, finds that it is undisputed that Defendant's investigation of Plaintiff's sales-call activity was not an adverse employment action. See Fed. R. Civ. P. 56(e)(2); see also Chi. Title Ins. Corp., 487 F.3d at 995 ("A district court is not required to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'"). Since Plaintiff did not suffer an adverse employment action, Plaintiff cannot establish the second element of her discrimination claim under the ADA regarding the investigation of her sales-call activity. See Bryson, 498 F.3d at 577. As a result, Plaintiff "fails to make a sufficient showing of an essential element of [her] case on which [she] bears the burden

of proof . . . [so] summary judgment is proper." Chapman, 670

F.3d at 680; see also Fed. R. Civ. P. 56(e)(3).

> **ii. Even If Plaintiff Could Establish a prima facie Claim, Plaintiff Does Not Cite to Evidence Sufficient To Show a Triable Issue of Material Fact as to Whether Defendant's Reason for Starting an Investigation of Plaintiff's Call Activity Was a Pretext.**

Defendant argues that it had a legitimate nondiscriminatory reason for investigating Plaintiff's sales-call activity because the investigation was started in response to a call received on its EthicsPoint hotline. (ECF No. 49-1 at 10.)

It is undisputed that Gaw called the EthicsPoint hotline to report that Plaintiff had falsified her call records, that Gaw submitted documents supporting her report, and that "Gaw's complaint should have led to an investigation of Plaintiff's call activity." (Pl.'s Undisputed Facts, ECF No. 53-3, ¶¶ 34-36.) The Court, therefore, finds that Defendant had a legitimate nondiscriminatory reason for investigating Plaintiff's sales-call activity. Under the McDonnell Douglas burden-shifting framework, Plaintiff would have to prove at trial that Defendant's reason was a pretext. See Stansberry, 651 F.3d at 488.

In its Memorandum in Support of Motion for Summary Judgment, Defendant has shown that the "adverse party cannot produce admissible evidence to support the fact" that Defendant's reason for investigating her sales-call activity was

a pretext. <u>See</u> Fed. R. Civ. P. 56(c)(1)(B). Defendant anticipated an argument based on delay and cited evidence suggesting that this argument is insufficient because Murphy's "delay in starting the investigation and timing was caused solely by Murphy's heavy workload and absence from the office." (ECF No. 49-1 at 10.) Furthermore, it is undisputed that, from April 28, 2010, to June 14, 2010, Murphy was busy completing her "substantial responsibilities" in connection with Eisai's company-wide restructuring of the sales force, which "include[ed] handling and processing a large number of severance agreements"; participating in the annual performance review process for Eisai employees; and taking personal time off. (Pl.'s Undisputed Facts, ECF No. 53-3, ¶ 38.)

Plaintiff does not "set forth specific facts showing a triable issue of material fact." <u>Mosholder</u>, 679 F.3d at 448-49. Plaintiff neither cites evidence suggesting that the EthicsPoint call was a pretext for starting the investigation itself nor makes any reference to her claim of discrimination based on Defendant's investigation of her sales-call activity.[7] (<u>See</u> Pl.'s Resp. in Opp'n, ECF No. 53.)

The Court, therefore, finds that it is undisputed that the EthicsPoint call was not a pretext for starting the

---

[7] Even if the Court were to consider the evidence of delay that Plaintiff introduces to support her claim of discrimination based on termination, that evidence is insufficient to create a triable issue of material fact. <u>See</u> discussion <u>infra</u> Part III.B.2.c.

investigation itself.  See Fed. R. Civ. P. 56(e)(2); see also

Chi. Title Ins. Corp., 487 F.3d at 995 ("A district court is not

required to 'search the entire record to establish that it is

bereft of a genuine issue of material fact.'").  Since

Defendant's reason for starting the investigation was not a

pretext, Plaintiff cannot establish a claim pursuant to the

McDonnell Douglas burden-shifting framework.  See Stansberry,

651 F.3d at 488.  As a result, Plaintiff "fails to make a

sufficient showing of an essential element of [her] case on

which [she] bears the burden of proof . . . [so] summary

judgment is proper."  Chapman, 670 F.3d at 680; see also Fed. R.

Civ. P. 56(e)(3).

       **c.**    **Regarding Defendant's Termination of Plaintiff's
Employment, Plaintiff Does Not Cite to Evidence
Sufficient To Show a Triable Issue of Material Fact as
to Whether Defendant's Reason Was a Pretext.**

In her Complaint, Plaintiff claims that Defendant

discriminated against her because she was terminated "due to her

association with and advocacy for a disabled person . . . in so

much as she was the mother of an infant daughter suffering from

Mosaic Down Syndrome."  (ECF No. 1 ¶ 66.)

In addition to challenging Plaintiff's ability to establish

a prima facie claim, Defendant argues that it had a legitimate

nondiscriminatory reason for terminating Plaintiff's employment:

after an investigation, Defendant had "a good faith belief that

[Plaintiff] falsified her call records." (Mem. in Supp. of Mot. for Summ. J., ECF No. 49-1, at 11.)

Terminating an employee for falsifying her call records to indicate that she has performed her job duties is a legitimate nondiscriminatory reason for terminating that employee. L'Bert v. West, No. 00-3893, 2001 WL 1450734, at **2 (6th Cir. Oct. 30, 2001). The Court, therefore, finds that Defendant has put forward a legitimate nondiscriminatory reason for terminating Plaintiff. See id. Under the McDonnell Douglas burden-shifting framework, Plaintiff will have to prove at trial that Defendant's reason was a pretext. See Stansberry, 651 F.3d at 488.

In its Memorandum in Support of Motion for Summary Judgment, Defendant asserts that Plaintiff "cannot produce admissible evidence to support the fact" that Defendant's reason for terminating her was a pretext. See Fed. R. Civ. P. 56(c)(1)(B). Defendant points to undisputed facts indicating that it terminated other employees for falsifying call records, and that it terminated Plaintiff based on the belief that she had falsified her call records. (ECF No. 49-1 at 13; see also Pl.'s Undisputed Facts, ECF No. 53-3, ¶¶ 49, 54.)

Plaintiff does not "set forth specific facts showing a triable issue of material fact" regarding pretext. See Mosholder, 679 F.3d at 448-49. The Court will consider

Plaintiff's evidence of pretext in the following order:
Defendant's delay in beginning the investigation into
Plaintiff's sales-call activity; Defendant's manner of
conducting the investigation; and Defendant's definition of a
"Detail Call."

### i. Plaintiff Does Not Cite to Evidence Sufficient To Show a Triable Issue of Material Fact Regarding Pretext Based on Defendant's Delay in Beginning an Investigation into Her Sales-Call Activity.

Plaintiff argues that pretext is shown by the fact that the
"investigation commenced almost two (2) months after the
complaint was filed and only days after Plaintiff received a
glowing performance review."[8] (Pl.'s Resp. in Opp'n, ECF No. 53,
at 10.) Plaintiff argues that this delay indicates pretext
because Murphy, in her deposition, "testified that complaints
made through Ethics Point [sic] are dealt with promptly." (Id.)

Murphy's deposition testimony, however, is insufficient to
establish a disputed issue of material fact. It is undisputed
that From April 28, 2010, to June 14, 2010, Murphy was busy
completing her "substantial responsibilities" in connection with
the company-wide restructuring of the sales force, which
"include[ed] handling and processing a large number of severance

---

[8] The fact that Plaintiff received a "glowing performance review" (Pl.'s Resp.
in Opp'n, ECF No. 53 at 10) contradicts Plaintiff's argument that "this case
appropriately can be placed under the 'distraction' theory" because Defendant
thought that Plaintiff would be distracted while at work because of her
association with her disabled daughter (id. at 3.) It is not reasonable to
infer that Defendant discriminated against Plaintiff based on a distraction
theory from the fact that Plaintiff was terminated "only days after Plaintiff
received a glowing performance review." (Id. at 10.)

agreements"; participating in the annual performance review process for Eisai employees; and taking personal time off. (Pl.'s Undisputed Facts, ECF No. 53-3, ¶ 38.) While inferences are drawn in the light most favorable to the non-moving party, the Court does not have to ignore the undisputed facts of the case. See Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 589 (6th Cir. 2003). In light of the undisputed facts, therefore, Plaintiff's citation to Murphy's deposition is insufficient to create a disputed issue of material fact regarding pretext.[9]

In addition, Plaintiff points to the termination memoranda of individuals that Defendant said were terminated for the same reason as Plaintiff. (Pl.'s Resp. in Opp'n, ECF No. 53, at 11.) Plaintiff claims that those termination memoranda show two things: that none of the five individuals "were terminated for the same violation of 'policy' as Plaintiff"; and that "the investigation and termination of those persons occurred within a matter of days." (Id.)

---

[9] Plaintiff does suggest that Murphy's reasons for delaying the investigation of Plaintiff are not credible. Plaintiff argues that, even if busy, Murphy would not have delayed for the following two reasons: Murphy knew that Plaintiff's performance was being evaluated by her immediate supervisors; and that "[m]any of the emails regarding Plaintiff's transfer were directed to Murphy." (Pl.'s Resp. in Opp'n, ECF No. 53, at 10-11.) Plaintiff, however, points to nothing in the record to support these assertions. See Chi. Title Ins. Corp., 487 F.3d at 995 ("A district court is not required to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'").

While Plaintiff attached only three termination memoranda to her brief (see ECF No. 53-7; ECF No. 53-8; ECF No. 53-9), it is clear that Plaintiff mischaracterizes the evidence. Regarding the claim that the other employees were not terminated for "the same violation of 'policy' as Plaintiff," the memoranda indicate that other employees were terminated for the same action and violation of Defendant's policy of integrity. One of the employees was terminated for "falsifying sales calls" (ECF No. 53-9), and Plaintiff was terminated for "falsification of call records" (ECF No. 49-6 at 51). Furthermore, two of the employees were terminated for lapses of "integrity" (ECF No. 53-8 at 2; ECF No. 53-9), and it is undisputed that Radney recommended that Plaintiff be terminated after determining that "Plaintiff violated [Defendant's] core value of integrity by falsifying her call records" (Pl.'s Undisputed Facts, ECF No. 53-3, ¶ 49).

Regarding the timeframe of investigation and termination referenced in the memoranda, it is clear that those events lasted for more than "a matter of days" in at least two instances. One of the memoranda indicates a delay of over a month, and another memorandum indicates a delay of at least two months, between learning of the activity that led to termination and the employee's termination. (ECF No. 53-8 at 2; ECF No. 53-9.)

In summary, Plaintiff's evidence of delay does not "set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448-49. Even drawing all inferences in the light most favorable to Plaintiff, Plaintiff's evidence regarding delay amounts to "a mere 'scintilla' of evidence in support of the non-moving party's position [which] is insufficient to defeat summary judgment." Tingle, 692 F.3d at 529.

### ii. Plaintiff's Evidence Regarding How Defendant Conducted Its Investigation of Plaintiff Is Irrelevant.

Plaintiff argues that Defendant did not draw its conclusions during the investigation in good faith. In support of that argument, Plaintiff cites Murphy's deposition testimony in which Murphy states that she does not remember if Radney spoke with the actual physicians referenced in Plaintiff's call records.[10] (Pl.'s Resp. in Opp'n, ECF No. 53, at 12; see also Murphy Dep. 135:21-136:1, ECF No. 53-11, at 17-18.)

Plaintiff's evidence is irrelevant. It is undisputed that Plaintiff claimed to have spoken with the physicians face-to-face, and that Defendant learned that some of the physicians were out of the country or in Boston, Massachusetts, when

---

[10] Plaintiff also mischaracterizes the cited evidence. In her brief, Plaintiff claims that Radney admitted that she never spoke with any of the doctors, and she cites her Statement of Additional Undisputed Material Facts. (Pl.'s Resp. in Opp'n, ECF No. 53, at 12.) In her Statement of Additional Undisputed Material Facts, however, Plaintiff cites Murphy's deposition, where Murphy testified that she did not know if Radney had contacted any of the physicians. (ECF No. 53-10 ¶ 23; Murphy Dep. 135:21-136:1, ECF No. 53-11, at 17-18.)

Plaintiff claimed to have met with them in Tennessee.[11]  (Pl.'s Undisputed Facts, ECF No. 53-3, ¶¶ 44-45.)  Therefore, it does not matter if Defendant's investigator spoke with the physicians themselves or with employees in the physicians' offices.

Plaintiff also cites other irrelevant evidence in the record.  Plaintiff cites deposition testimony indicating that Gaw exaggerated some of her comments regarding Plaintiff, and that Murphy turned over the documents from Gaw to Defendant's investigator without doing an investigation herself.  (Pl.'s Resp. in Opp'n, ECF No. 53, at 12.)  The undisputed facts, however, show that Plaintiff falsified her call records.  (Pl.'s Undisputed Facts, ECF No. 53-3, ¶¶ 44-46.)  As a result, the evidence Plaintiff points to is insufficient to create a disputed issue of material fact.  See Wexler, 317 F.3d at 589 (stating that drawing all inferences in favor of the nonmoving party when deciding a motion for summary judgment does not require the court to ignore the undisputed facts).

### iii. Plaintiff's Evidence Regarding Defendant's Definition of a "Detail Call" Is Irrelevant.

Plaintiff argues that the definition of a "Detail Call" demonstrates that Defendant's reason for terminating Plaintiff was a pretext.

---

[11] Plaintiff disputed the relevant portion of this fact as hearsay.  (Pl.'s Undisputed Facts, ECF No. 53-3, ¶ 45.)  The statements of those interviewed, however, are not hearsay.  See discussion supra note 4.

> The most clear and convincing fact that Defendant's
> stated reason is pretext is that even if Plaintiff did
> not contact a physician, she did not violate
> Defendant's policy.  This is direct evidence that
> Defendant did not act in good faith in terminating
> Plaintiff as Defendant was aware that it allowed
> employee's to speak with persons other than a
> physician to report a "detailed call."

(Pl.'s Resp. in Opp'n, ECF No. 53, at 13.)

Plaintiff's argument is irrelevant.  It is undisputed that Eisai identifies "'Misconduct' which may lead to termination" to include "falsifying information on any company document or record."  (Pl.'s Undisputed Facts, ECF No. 53-3, ¶ 48.)  It is also undisputed that Plaintiff was terminated because she "violated Eisai's core value of integrity by falsifying her call activity records."  (Id. ¶ 49; Mem. Regarding Termination of Tonya Lukic, ECF No. 49-6, at 51.)  Finally, it is undisputed that Plaintiff said that she spoke to physicians face-to-face on dates when they were either out of the country or in Boston, Massachusetts.  (Pl.'s Undisputed Facts, ECF No. 53-3, ¶¶ 44-46; see also Lukic Call Records, ECF No. 49-9 at 29-49.) Defendant's definition of a "Detail Call," therefore, is irrelevant:  Plaintiff was terminated for falsifying call records, not for recording calls that were not "Detail Calls." See Wexler, 317 F.3d at 589 (stating that drawing all inferences in favor of the nonmoving party when deciding a motion for

summary judgment does not require the court to ignore the undisputed facts).

In summary, Plaintiff does not "set forth specific facts showing a triable issue of material fact" regarding pretext. See Mosholder, 679 F.3d at 448-49. Plaintiff thus cannot meet her summary-judgment burden in the context of the McDonnell Douglas burden-shifting framework applied by the Sixth Circuit. See Stansberry, 651 F.3d at 488. As a result, Plaintiff "fails to make a sufficient showing of an essential element of [her] case on which [she] bears the burden of proof . . . [so] summary judgment is proper" on all of Plaintiff's ADA claims. See Chapman, 670 F.3d at 680; see also Fed. R. Civ. P. 56(e)(3).

## C. Defendant Is Entitled to Summary Judgment Regarding Plaintiff's FMLA Claim.

The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2) (2006). The FMLA thus prohibits retaliation for taking FMLA leave. Donald, 667 F.3d at 761.

In her Complaint, Plaintiff claims that "she was terminated in retaliation for her decision to exercise her FMLA rights." (Compl., ECF No. 1, ¶ 94.) Specifically, Plaintiff claims that she was terminated "due to the fact that she requested FMLA

leave following the birth of her special needs daughter and her diagnosis with Mosaic Down Syndrome." (Id. ¶ 92.)

Plaintiff relies on temporal proximity to establish a causal connection between her FMLA leave and her termination. (See Pl.'s Resp. in Opp'n, ECF No. 53, at 19.) "[C]lose proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." DiCarlo v. Potter, 358 F.3d 408, 421 (6th Cir. 2004). Since Plaintiff only produces indirect evidence, the McDonnell Douglas burden-shifting framework applies to Plaintiff's retaliation claim under the FMLA. See Donald, 667 F.3d at 762.

In addition to arguing that Plaintiff cannot establish a prima facie claim, Defendant argues that it terminated Plaintiff for falsifying her call records. (Mem. in Supp. of Mot. for Summ. J., ECF No. 49-1, at 19.) The Court, therefore, finds that Defendant has established a legitimate nondiscriminatory reason for terminating Plaintiff's employment. See L'Bert, 2001 WL 1450734, at **2 (stating that terminating an employee for falsifying call records to indicate that she has performed her job duties is a legitimate nondiscriminatory reason for terminating that employee). Under the McDonnell Douglas burden-shifting framework, Plaintiff would have to prove at trial that Defendant's reason was a pretext. See Donald, 667 F.3d at 762.

In its Memorandum in Support of Motion for Summary Judgment, Defendant argues that the "adverse party cannot produce admissible evidence to support the fact" that Defendant's reason for terminating her employment was a pretext. See Fed. R. Civ. P. 56(c)(1)(B). Defendant argues that the only evidence that Plaintiff can put forward regarding pretext is the temporal proximity between her FMLA leave and her termination, which is insufficient to show pretext under Sixth Circuit precedent. (Mem. in Supp. of Mot. for Summ. J., ECF No. 49-1, at 19-20 (citing Donald, 667 F.3d at 763).)

Plaintiff does not "set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448-49. The Court considers Plaintiff's evidence of pretext and then considers that evidence in light of the temporal proximity between Plaintiff's FMLA leave and termination.

**1. Regarding Plaintiff's FMLA Claim, Plaintiff Does Not Cite to Evidence Sufficient To Show a Triable Issue of Material Fact Regarding Pretext.**

In her Response in Opposition, Plaintiff attempts to establish pretext by referring to her argument regarding pretext in the context of the ADA. (Pl.'s Resp. in Opp'n, ECF No. 53, at 20.) As discussed above, however, Plaintiff does not "set forth specific facts showing a triable issue of material fact" regarding pretext. See discussion supra Part III.B.2.c.

**2. Plaintiff Does Not Cite to Evidence Sufficient To Show a Triable Issue of Material Fact Regarding Pretext Even in Light of the Temporal Proximity Between Plaintiff's FMLA Leave and Her Termination.**

Plaintiff relies on temporal proximity to establish a causal connection between her FMLA leave and her termination. (See Pl.'s Resp. in Opp'n, ECF No. 53, at 19.) Taken by itself, temporal proximity is insufficient to establish pretext. Donald, 667 F.3d at 763 (citing Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 317 (6th Cir. 2001)).

Temporal proximity, however, may bolster other evidence put forward by the plaintiff: "[S]uspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence." Seeger v. Cincinnati Bell Tel. Co., 681 F.3d 274, 285 (6th Cir. 2012) (quoting Bell v. Prefix, Inc., 321 F. App'x 423, 431 (6th Cir. 2009)) (internal quotation marks omitted).

In the case presently before this Court, however, Plaintiff's evidence of temporal proximity does not sufficiently bolster other evidence of pretext. Taken in the light most favorable to Plaintiff, the temporal proximity is approximately five months. Plaintiff returned from FMLA leave on February 22, 2010, and Plaintiff's employment was terminated on July 16, 2010. (Pl.'s Undisputed Facts, ECF No. 53-3, ¶¶ 51, 55.) Plaintiff cites no authority suggesting that a temporal proximity of approximately five months is "suspicious timing

that is a strong indicator of pretext." See Seeger, 681 F.3d at 285 (quoting Prefix, Inc., 321 F. App'x at 431) (internal quotation marks omitted).

Given this tenuous temporal proximity, and the insufficiency of the other evidence Plaintiff offers to suggest pretext, see discussion supra Part III.B.2.c., Defendant is entitled to summary judgment regarding Plaintiff's FMLA claim. To find otherwise "requires an inference that violates the fundamental rule that '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to survive summary judgment." Donald, 667 F.3d at 763 (quoting Anderson, 477 U.S. at 252).

In summary, Plaintiff does not "set forth specific facts showing a triable issue of material fact" regarding pretext. See Mosholder, 679 F.3d at 448-49. Plaintiff thus does not meet her summary-judgment burden in the context of the McDonnell Douglas burden-shifting framework applied by the Sixth Circuit. See Donald, 667 F.3d at 762. As a result, Plaintiff "fails to make a sufficient showing of an essential element of [her] case on which [she] bears the burden of proof . . . [so] summary judgment is proper" on Plaintiff's FMLA claim. See Chapman, 670 F.3d at 680; see also Fed. R. Civ. P. 56(e)(3).

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 49) is GRANTED.

**IT IS SO ORDERED,** this 28th day of January, 2013.

/s/ Jon P. McCalla
JON P. McCALLA
CHIEF U.S. DISTRICT JUDGE